UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| PLANNED PARENTHOOD OF KANSAS AND MID-MISSOURI, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PETER LYSKOWSKI, )<br>)<br>Defendant. ) | Civil No. 2:15-cv-04273-NKL |

**ORDER**

Pending before the Court is Plaintiff Planned Parenthood of Kansas and Mid-Missouri, Inc.'s ("PPKM") motion for attorneys' fees, Doc. 79, and Missouri Department of Health and Senior Services' ("DHSS") motion to alter or amend judgment, Doc. 83. For the reasons set forth below, PPKM's motion for attorneys' fees is granted in part and denied in part. DHSS's motion to alter or amend is denied.

**I.    Background**

In November 2015, PPKM filed a motion for preliminary injunction to prevent DHSS from revoking its Ambulatory Surgical Center ("ASC") license after PPKM's physician lost her admitting privileges at the University of Missouri hospital. Following the issuance of a temporary injunction, discovery, and oral arguments, the Court granted PPKM's motion for preliminary injunction, concluding that DHSS's attempted revocation of the ASC license violated the Equal Protection clause of the Fourteenth Amendment of the U.S. Constitution. In May 2016, the Court granted PPKM's request for a permanent injunction through the date its ASC license expired. PPKM now

1

requests attorneys' fees for its successful litigation of the case, and DHSS requests that the Court alter or amend its order granting PPKM's motion for permanent injunction.

## II. Discussion

### A. PPKM's Motion for Attorneys' Fees

Following the Court's order granting PPKM a permanent injunction prohibiting DHSS from revoking its ASC license before the license's expiration date, PPKM filed a motion for attorneys' fees requesting that the Court award PPKM $156,788.18 in fees and expenses.[1]

In allocating attorneys' fees between parties, Missouri ascribes to the "American Rule," requiring that "parties bear their own attorneys' fees unless fee shifting is authorized by contract or statute." *Brown v. Brown-Thill*, 2014 WL 3892962, at *10 (8th Cir. 2014). In order to recover fees, the party requesting fees must be the prevailing party in the litigation. *Motor Control Specialties, Inc. v. Labor and Industrial Relations Commission*, 323 S.W.3d 843, 854 (Mo. Ct. App. 2010). In order to be the prevailing party, the litigant need only obtain "a favorable decision on a single issue if the issue is one of significance in the underlying case." *Id.* (quotations omitted) (quoting *Greenbriar Hills Country Club v. Dir. of Revenue*, 47 S.W.3d 346, 353 (Mo. banc 2001). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates."

---

[1] In PPKM's initial motion for attorneys' fees, it requested $156,769.68 in fees. In its reply brief it adjusted this number to $156,788.18 to account for the time spent preparing its reply suggestions and the time entries PPKM concedes should not have been included in its original computation.

2

*Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983)).

### 1. PPKM's Success on the Merits

DHSS argues that PPKM's fee award should be substantially reduced because the relief obtained by PPKM did not actually benefit the center as it was unable to use the ASC license before it expired. PPKM did not secure a physician with admitting privileges to provide abortion services at the center before the license expired at the end of June.

While PPKM was not able to "use" the ASC license insofar as it permitted the center to perform abortions with the requisite doctor, this does not mean that PPKM incurred no benefit by prevailing in the lawsuit. As the Court noted in its preliminary and permanent injunction orders, the value of a property right does not evaporate simply because the property is not being utilized. The Supreme Court has repeatedly recognized that "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992); *Texas State Teachers Assn v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989). PPKM was able to retain its legal status as an ASC because it prevailed in the litigation, which constituted a concrete and significant benefit to PPKM even though the center was not performing abortions.

DHSS also argues that PPKM achieved only limited success on its claims as a whole. While the Court granted PPKM's requests for preliminary and permanent injunctions based on their equal protection arguments, the Court did not address their due

3

process arguments. DHSS contends that PPKM's failure to succeed on its due process claim justifies a 25% reduction in the lodestar amount.

The Supreme Court has specifically rejected the idea that an attorneys' fees award should be reduced simply because a plaintiff does not prevail on every argument raised in a lawsuit. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). Here, PPKM achieved total success on the merits by being granted both a preliminary and permanent injunction on equal protection grounds. PPKM's due process arguments were not frivolous, and therefore the Court will not reduce the lodestar simply because it did not reach the due process claims.

### 2. Excessive or Unnecessary Time Claimed

DHSS argues that the following time entries included excessive or unnecessary time which should be deducted from PPKM's attorneys' fees award[2]:

### a. Time Expended by Melissa Cohen

On December 2, 2015, Melissa Cohen billed 3.5 hours for preparing for the second TRO hearing. This included 3.0 hours preparing for the hearing and reviewing the DHSS filing and 0.5 hours for a phone call with Carrie Flaxman regarding the filings and preparation for the hearing. DHSS notes that Diana Salgado also billed 2 hours of

---

[2] DHSS argues that two entries, one for a TRO hearing attended by Melissa Cohen and one for time Douglas Ghertner spent reviewing a notice of appeal, should be reduced. PPKM agrees that a reduction to these two entries is appropriate. As such, DHSS's arguments regarding these two entries are not discussed here.

4

preparation time for a permanent injunction hearing on December 18, 2015. DHSS contends that Cohen's time should be reduced by 1.5 hours, but does not explain why the amount of time logged by Cohen was unreasonable, or why Salgado's 2 hour time entry for a hearing on December 18 has any bearing on the propriety of Cohen's entries in preparation for a hearing on December 3. Given the complicated constitutional questions at issue in this lawsuit, the Court finds that the time spent by Cohen in these time entries was reasonable, and it will not be reduced.

Between April 25 and 28, 2016, Cohen billed 10.8 hours for preparation for the permanent injunction argument. DHSS notes that neither party submitted any additional evidence in conjunction with the permanent injunction motion, and that the parties' legal arguments were similar to those made in conjunction with the preliminary injunction. DHSS contends that Cohen's time entries should be reduced by 8.8 hours. The Court will not reduce these hours as requested by DHSS. While the arguments presented in conjunction with the motions for preliminary injunction and permanent injunction were extremely similar, the issues were sufficiently complicated and a sufficient time elapsed between the arguments on the two motions to justify the time expenditure in connection the permanent injunction argument.

### b. Time Expended by Douglas Ghertner

Douglas Ghertner billed 0.5 hours on December 4, 2015 for "receipt and review of DHSS discovery responses." DHSS notes that this entry appears to be in error. PPKM agrees that the description of the entry contains an error, and that it does not reflect Ghertner's original receipt of the discovery responses. PPKM states that the time was

5

actually spent reviewing DHSS's responses as PPKM worked to prepare their formal discovery requests. Ghertner also billed 1.5 hours on December 1 for a phone call with Cohen regarding the DHSS response. DHSS notes that the body of its response to the discovery request was only four pages long, and contends that the 0.5 hour entry on December 4 should not be allowed. Given the brevity of the discovery response and the 1.5 hours spent reviewing and discussing the four page document on December 1, the Court will disallow the 0.5 hour entry on December 4.

On December 17, 2015, Ghertner billed 5.0 hours for reviewing all filings related to the preliminary injunction. DHSS contends this entry should be disallowed because Ghertner did not handle the December 18 preliminary injunction argument. DHSS also notes that PPKM's other attorneys billed substantially less time for reviewing the draft preliminary injunction reply. PPKM has agreed to reduce this entry to 2 hours to reflect Ghertner's initial review of DHSS's response suggestions and PPKM's reply suggestions regarding the motion for preliminary injunction. The Court agrees that 2 hours is a reasonable time entry for these tasks and Ghertner's time entry will not be reduced further.

### c. Time Expended by Carrie Flaxman

On March 9, 2016, Carrie Flaxman billed 0.1 hours for a phone call with Emily Dodge that took just under one minute. DHSS contends that this entry should be excluded.

PPKM argues that this entry should not be excluded because the time Flaxman billed also included emails with Cohen before the call and an email after the call,

6

comprising the one-tenth of an hour. PPKM also notes that the Eighth Circuit has approved of tracking hours in one-tenth increments. *See Republican Party of Minn. v. White*, 456 F.3d 912, 920 (8th Cir. 2006). Given the Eighth Circuit's approval of this method of time-keeping and the emails sent in conjunction with the phone call for which the entry was billed, this entry will not be excluded.

### 3. Total Attorneys' Fees Award

PPKM seeks $2,750 for time spent preparing its reply in support of its motion for attorneys' fees, comprised of 0.4 hours spent by Flaxman and 8.0 hours spent by Cohen. The Court finds that these entries reasonably reflect the length of time necessary to draft, edit, and review the reply suggestions.

PPKM's request for $156,788.18 in attorneys' fees, comprised of $156,678 in statutory fees and $110.18 in expenses, will be reduced by $157.50 for the 0.5 hours billed by Ghertner on December 4, 2015 spent reviewing of DHSS discovery responses. PPKM is granted attorneys' fees and expenses in the amount of $156,630.68.

### B. DHSS's Motion to Alter or Amend Judgment

DHSS requests that the Court make numerous amendments to its order granting PPKM's motion for permanent injunction based pursuant to Federal Rule of Procedure 59(e).

Motions to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quotation omitted). "A Rule 59(e) motion to alter or amend the

7

judgment must show: '1) an intervening change in controlling law; 2) the availability of new evidence not available previously; or 3) the need to correct a clear error of law to prevent injustice.'" *Hutchins v. Southwestern Bell Telephone Co., Inc.*, 2013 WL 6662541, at *1 (E.D. Mo. Dec. 17, 2013). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." 11 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2810.1 (3d ed.).

First, DHSS requests that the Court retroactively deny PPKM's request for declaratory relief, which was not addressed in the permanent injunction order. The case cited by DHSS in support of its argument supports the Court's conclusion that the permanent injunction order should not be retroactively amended to address PPKM's request for declaratory judgment. In *Roark v. South Iron R-1 School Dist.*, 573 F.3d 556, 562 (8th Cir. 2009), the Eighth Circuit noted:

> The declaratory judgment incorporating Paragraph A of the amended complaint is superfluous. A major purpose of the Declaratory Judgment Act was "to provide an *alternative* [remedy] to injunctions against state officials," particularly in situations where a more intrusive injunction would not be appropriate. *Steffel v. Thompson*, 415 U.S. 452, 467, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (quotation omitted, emphasis added). Here, the operative remedy is a permanent injunction based on the district court's determination that the Establishment Clause has been violated. Like any other, this injunction may be the subject of future judicial proceedings. Those proceedings should not be burdened by a declaratory judgment whose presence would only add confusion and complexity. This portion of the declaratory judgment is vacated.

This passage does not indicate that where a court finds it appropriate to grant the plaintiff injunctive relief, declaratory relief should be denied. If the Eighth Circuit had concluded that the request for declaratory judgment which corresponded with the injunction should

8

have been denied, it could have reversed the district court's opinion. Instead, it vacated the portion of the declaratory judgment which provided an alternative remedy to the injunction.[3] As such, there is no reason for the Court to now go back and deny the declaratory injunction request. Such a denial would serve no purpose other than to "add confusion and complexity" to the Court's order.

Second, DHSS asks the Court to correct its factual finding that an ASC's violation of the hospital privileges requirement is not "the highest" level of severity of ASC deficiencies, citing testimony of Bill Koebel, a DHSS corporate representative who stated that it was the highest severity of deficiency. However, the Court's opinion specifically stated that "the Court concludes that [Koebel's] statement is inconsistent with DHSS practice and procedure" because the enforcement statute indicates that the most significant deficiencies are those presenting threats to patient health and safety. In rejecting Koebel's statements, the Court performed its function of weighing evidence and making factual findings based on the record before it. The Court does not believe that Koebel's testimony comports with the remainder of the record, and will not revisit its factual finding.

Third, DHSS requests that the Court revise its conclusion that the Surgical Center of Creve Coeur's physician was diagnosed with Parkinson's Disease in February 2011

---

[3] The Eighth Circuit did reverse the district court's decision to grant declaratory judgment on Paragraph B of the amended complaint, which addressed the facial validity of one of the defendant's policies. As PPKM clarified numerous times, they did not ask the Court to determine the facial validity of the admitting privileges requirement. Therefore, this portion of the *Roark* decision does not indicate that denial of the declaratory judgment request is appropriate.

9

because an email from a DHSS email noted at one point that the doctor denied having Parkinson's Disease. The record suggests that the doctor suffered from ongoing tremors and continued to practice medicine even after his symptoms progressed to the point of creating danger for his patients. This evidence suggests that DHSS administrator John Langston's note that the doctor had been diagnosed with Parkinson's Disease was accurate and that the doctor's denial was not credible. The Court will not change its finding.

Fourth, DHSS contests the Court's finding that "[g]enerally, all decisions about plans of correction and ASC license actions are made by DHSS at the 'bureau-level.'" DHSS argues that Langston stated only that "the majority" of decisions are made at the bureau-level. The Court's finding is not inconsistent with Langston's testimony, and in any event does not constitute a "manifest error . . . of fact" to justify reconsideration under Rule 59(e). The Court never found that all decisions about plans of correction were made at the bureau level, but noted that the general decision-making process was confined to the bureau level.

Finally, DHSS requests that the Court alter its finding that "[i]n July 2012 DHSS also noted that [the Surgical Center of Creve Coeur's] sole physician was no longer performing surgery at the center," because the cited email states that the doctor "would not be" performing surgery at the center in the future. DHSS does not explain why this semantic distinction matters. The Court's conclusion was extracted from a statement by Langston that the physician's lawyer had told him the doctor "will NOT be performing surgery there, period." This unequivocal statement indicates that the doctor was being

10

prevented from performing any future surgeries and in fact was no longer performing surgery at the center. The Court will not alter its decision.

### III. Conclusion

For the reasons set forth above, PPKM's motion for attorneys' fees is granted in part and denied in part. PPKM is entitled to $156,630.68 in attorneys' fees and expenses. DHSS's motion to alter or amend is denied.

/s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 1, 2016  
Jefferson City, Missouri